UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

LOIS A. BOYKIN,                                          CASE NO. 11-03915-WSS

  Debtor.                                                Chapter 11

**ORDER ON DEBTOR'S MOTION TO SET APART
AS EXEMPT LIFE INSURANCE PROCEEDS**

Irvin Grodsky, Counsel for the Debtor
Jeremy L. Retherford, Counsel for Parsons & Whittemore Enterprises Corporation
Travis M. Bedsole, Jr., Bankruptcy Administrator

This matter came before the Court on the Debtor's motion to set apart as exempt life insurance proceeds, and Parsons & Whittemore Enterprises Corporation's ("P&W") objection to the motion. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. After due consideration of the pleadings, briefs, evidence and argument of counsel, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The Debtor, Lois Boykin, filed a chapter 11 petition on September 23, 2011. She was married to Jack W. Boykin, who passed away on August 25, 2011. Jack Boykin was the managing member of Cello Energy, LLC, the owner of research and production technology allegedly useful for manufacturing synthetic fuel from carbon-containing cellulosic material. Boykin Trust, LLC was the sole member of Cello. In 2007, P&W began negotiations with Cello, acting through Jack Boykin, for the use of Cello's research and technology, and entered into a nondisclosure agreement in preparation for the construction and operation of a plant to

1

manufacture cellulosic fuel. P&W paid to Cello a $2.5 million option payment for a one-third interest in Cello. On October 16, 2007, P&W filed a lawsuit against Cello, Jack Boykin and others alleging that Boykin had made a series of misrepresentations about Cello's technology and its viability for manufacturing fuel, and that P&W had relied on these misrepresentations when paying the $2.5 million option payment. After a two week trial in June 2009, a jury returned a verdict in favor of P&W and against Jack Boykin, Cello, Boykin Trust, and Allen Boykin (Lois and Jack Boykin's son). The U.S. District Court for the Southern District of Alabama ("the District Court") entered a judgment based on the jury verdict and awarded damages of $10,431,560.50 for P&W and against Cello and Boykin Trust, and damages of $7,604,437.50 for P&W and against Jack and Allen Boykin on September 27, 2010.[1] This judgment is presently on appeal.

After P&W paid Cello $2.5 million, Cello transferred $30,000 per month plus an additional $10,000 to Boykin Trust for a total of $700,000. Boykin Trust then transferred $20,000 per month to Lois Boykin for a total of $460,000 with an additional $30,000 in December 2007 and $20,000 in December 2008. In September 2009, P&W also filed suit in the District Court against Lois Boykin, Cello and others to avoid fraudulent transfers between Boykin Trust and Lois Boykin. After a bench trial in September 2010, the District Court found that Boykin Trust was formed for a fraudulent purpose, and that Lois, Jack and Allen Boykin used Boykin Trust as an instrumentality to fund their personal expenses. The Court entered a judgment for $10,431, 560.50 in favor of P&W and against Lois and Allen Boykin on February

---

[1] In October 2010, Jack Boykin, Cello, and Boykin Trust each filed chapter 11 bankruptcy petitions which are being jointly administered by Judge Margaret Mahoney of this Court.

3, 2011. The judgment was not appealed and is now a final judgment. When P&W sought a marshal's sale of Lois Boykin's home, she filed the present chapter 11 petition on September 23, 2011.

Long before the Boykins' dealings with P&W, Lois and Jack Boykin met with George Bryant, an insurance agent, about purchasing life insurance. On October 12, 1987, Lois Boykin applied for a $1 million life insurance policy on Jack Boykin. Jack Boykin was the named insured on the policy, and Lois Boykin was listed at the beneficiary and the owner of the policy. The application states: "OWNER: The owner of the new policy will be the insured unless otherwise indicated below:", and below this statement Lois Boykin is listed as the owner of the policy. Mrs. Boykin stated that she does not recall how Bryant was contacted about the insurance policies; however, Mr. Bryant was a friend and he probably initiated the meeting. At trial, Mrs. Boykin testified that she instructed Bryant to list her as the owner of the policy. In a 2004 exam done prior to the trial of this matter, Mrs. Boykin stated that she did not have a particular reason why she was named as the owner and the beneficiary of the policy on Mr. Boykin's life, and that it may have been at Bryant's suggestion. Mrs. Boykin received the annual reports and statements regarding the policy, and these reports listed her as the owner and beneficiary of the policy. The Boykins also had life insurance policies on Lois Boykin and each of their two children.

The $988.34 premiums for the life insurance policy at issue were paid from Lois Boykin's operating account, located first at AmSouth Bank and then at the First National Bank of Baldwin County. This account was the same checking account that the $484,000 from P&W eventually were deposited. The money in Mrs. Boykin's checking account came from her work buying and selling real estate. Mr. Boykin also put funds, like his Social Security checks and income tax

3

refunds, into her account. Mrs. Boykin's account was used to pay household bills. Mr. Boykin sometimes deposited his Social Security checks in his own checking account at First National Bank of Baldwin County. At the 2004 examination, Mrs. Boykin testified that Mr. Boykin placed all of his Social Security checks into her operating account; however, she testified at trial that she did not know that Mr. Boykin had a separate checking account at the time of the 2004 examination. She found the statement from Mr. Boykin's account after the 2004 examination.

Jason Westbrook is a CPA and certified evaluation analyst who examined the Boykins' financial and bank records in connection with the P&W litigation against Cello, Boykin Trust and the Boykins. Mrs. Boykin had two bank accounts at First National Bank of Baldwin County, a money market account and an operating account from which personal and household expenses were paid. Mr. Boykin's Social Security checks, income tax refunds and transfers from the money market account were placed in the operating account. Boykin Trust deposited approximately $483,000 that it received from P&W into this account. Mr. Boykin deposited $63,000 in social security benefits into the operating account from February, 2007 to April, 2010. Payments for credit cards, groceries, insurance premiums and other household expenses were made from the operating account during this time period. The premiums for all of the Boykin life insurance policies equaled approximately $43,000 from March, 2007 to April, 2010; however, it is not clear how much of this amount is attributable to the policy at issue. Mrs. Boykin deposited $176,000 from a redeemed certificate of deposit, and $50,000 was transferred from her money market account between March 2007 and April 2010. Both Mr. and Mrs. Boykin's funds were co-mingled along with the $483,000 from Boykin Trust in the operating account for household expenses between March 2007 and April 2010. Westbrook's review of the Boykins' banking and

4

financial records only encompassed 2007 through 2010. He did not examine records from before 2007.

Upon Mr. Boykin's death, Mrs. Boykin received a check from Lincoln National Life Insurance Company for $969,610.24. The amount reflects the $1 million policy less a loan taken on the policy. She claimed these funds as exempt in her bankruptcy case. Mrs. Boykin put the funds in a separate account at BankTrust on advice of counsel and with permission from the Bankruptcy Administrator. The Court allowed her approximately $10,000 of the insurance proceeds for household expenses and chapter 11 bankruptcy fees for Cello and Boykin Trust.

## CONCLUSIONS OF LAW

Mrs. Boykin claims the life insurance proceeds at issue to be exempt under the Code of Alabama (1975) § 27-14-29(b):

> If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on the life of another in favor of the person effecting the same or, except in cases of transfer with intent to defraud creditors, is made payable by assignment, change of beneficiary or otherwise to any such person, the latter shall be entitled to the proceeds and avails of the policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. <u>If the person effecting the insurance, or the assignee of such insurance, is the wife of the insured, she shall also be entitled to the proceeds and avails of the policy as against her own creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts.</u> (Emphasis added.)

The issue before the Court is whether the Debtor qualifies as "the person effecting the insurance" under §27-14-29(b). P&W claims that Mrs. Boykin did not take affirmative action in procuring the insurance for herself to qualify as "the person effecting the insurance", and should

5

the Court find that Boykin does qualify under the statute, she should not get the benefit of the exemption under the doctrine of unclean hands.

P&W asserts that Mrs. Boykin is not "the person effecting the insurance" under §27-14-29(b) based on her testimony at the §341 meeting and a 2004 examination. Mrs. Boykin testified that she did not remember why she is listed as the owner and beneficiary on the policy at issue, and proposed that the insurance agent may have suggested the arrangement. Boykin also testified that she did not remember if she or her husband initiated the purchase of the policy, and that it was probably a joint decision. According to P&W, this testimony does not meet the level of proof needed to "effect" an insurance policy as set out in *Matter of Levine*, 38 N.Y.S. 2d 442, 444 (N.Y.S. 1942), which describes the person effecting a policy to be "the one who is the 'procuring cause' of the insurance." P&W also cites *Matter of Bifulci*, 154 F.Supp. 629, 631 (S.D. N.Y. 1957), which held that the exemption applies only when "the wife of her own initiative takes out insurance upon her husband, making application for the policy and receiving the policy."

As the parties have noted, there is no Alabama case law defining what it means to effect an insurance policy, so the parties are left citing cases based on a New York statute with similar wording. See *In re McWhorter*, 312 B.R. 695, 698 (Bankr. N.D. Ala. 2004). Both the *Levine* and the *Bifulci* cases involve fact situations where the husband applied for the policy and was named as owner of a policy of insurance with the debtor wife named as the beneficiary. *Levine*, 38 N.Y.S. at 443 ("we assume the case to be the ordinary one of a husband's applying for and obtaining insurance upon his own life naming his wife as beneficiary, he paying the premiums."); *Bifulci*, 154 F.Supp. at 630 (the husband of the debtor made application for a life insurance

6

policy on his own life with the policy issued and delivered to him; the debtor-wife paid the premiums from her own bank accounts). In both cases, the parties do not dispute the written application or the insurance contract. The debtors in both cases argue that they, as mere beneficiaries, are entitled to exempt the insurance proceeds as to their own creditors, even though they did not apply for the policies and were not named as owners. In Mrs. Boykin's case, her name is clearly listed as the applicant and she signed the application as the owner of the policy. There is even a section of the application which says, "OWNER: The owner of the new policy will be the Insured unless otherwise indicated below:", and Lois Boykin's name is listed with her address and Social Security number. Unlike the wives in *Levine* and *Bifulci*, Lois Boykin is listed from its inception as the owner and the beneficiary of the life insurance policy at issue. The written document naming the debtor as owner and applicant is the best evidence of who effected the insurance policy.

     P&W makes much of the fact that Mrs. Boykin cannot remember the facts surrounding the purchase of the policy, that she conferred with her husband about the insurance and may have been counseled by her insurance agent about being named as owner of the policy. The Court agrees that her testimony at the hearing conflicts with previous testimony she has given, but is not surprised that Mrs. Boykin cannot remember the details of purchasing a life insurance policy almost twenty five years ago. Further, it is a common practice for married couples to discuss financial decisions such as life insurance, and for people not working in the insurance business to discuss insurance matters with their insurance agents. Even if Mrs. Boykin discussed the policy with her husband and sought advice from her agent, the end result is embodied in the application for insurance. She applied for the policy, was named as owner of the policy, and paid

the premiums on the policy for almost 25 years. It would indeed be a narrow reading of §27-14-29(b) if the wife was forced to prove that she obtained a life insurance policy on her husband's life without talking about it with him or seeking advice from an insurance agent. The Court is reluctant to ignore the plain language of the application for insurance without any binding precedence. Therefore, the Court finds that Mrs. Boykin is the person effecting the insurance under §27-14-29(b) of the Code of Alabama.

P&W also maintains that Mrs. Boykin should not be allowed the benefit of the exemption based on the doctrine of unclean hands, referring to its judgment against Mrs. Boykin and her involvement in Cello's action to defraud P&W. P&W maintains that the premiums for the policy on Mr. Boykin's life were paid from funds that P&W transferred to Boykin Trust which were then transferred to Mrs. Boykin's operating account. However, the evidence showed that Mrs. Boykin deposited $176,000 of her own money from a redeemed certificate of deposit, and $50,000 was transferred from her money market account to the operating account between March 2007 and April 2010. Mr. Boykin also deposited some of his Social Security checks into the account. While it is possible that some of P&W's funds were used to pay the premiums for the life insurance policy at issue, the fact that P&W's funds were co-mingled with the Boykins' funds makes such a finding speculative. Based on this evidence, P&W has not proved that the funds obtained by Cello and Boykin Trust's deception and transferred to Mrs. Boykin were the source of the premium payments for the insurance policy at issue, nor, if used, how much of P&W's funds were actually spent toward premiums for this specific policy.

P&W cites *Gossum v. Moore*, 1991 Tenn. App. LEXIS 648, *14 (Tenn. App. Aug. 22, 1991) and *Commodity Futures Trading Comm'n v. Hudgins*, 620 F.Supp.2d 790, 793 (E.D. Tex.

8

2009) as the basis for denying the exemption due to unclean hands. Both cases are distinguishable from Boykin's case. In *Gossum*, the court refused to allow the plaintiff to exempt funds from an automobile accident settlement from Blue Cross Blue Shield because the plaintiff failed to protect Blue Cross's subrogation interest despite having direct knowledge of the interest. In *Hudgins*, the defendant operated a Ponzi scheme and used some of the proceeds to pay off the mortgage on a friend's condominium. When a receiver sought to seize the condominium to compensate the victims of the Ponzi scheme, the court refused the friend's assertion of a homestead exemption because the funds were fraudulently obtained; the court noted that there was no dispute that the funds used to pay off the mortgage came from the Ponzi scheme. In both cases cited by P&W, there was a direct connection between the exemption sought and the deceptive action involved. There was also an identifiable source of funds related to the deception. Boykin refers to the Supreme Court's holding in *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct 246, 78 L.Ed. 293 (1933) that the doctrine of unclean hands can be applied only when the misconduct "has immediate and necessary relation to the equity" sought in the litigation. P&W claims that the funds paid to Boykin Trust as a result of Mr. Boykin's deception were deposited in Mrs. Boykin's operating account with her knowledge and cooperation, and that she used these funds to pay the premiums for the life insurance policy. However, P&W failed to show that the funds paid to Boykin Trust and then to Mrs. Boykin from March 2007 to April 2010 were used to pay the premiums. In addition, Boykin paid the premiums on the life insurance policy from 1987 to 2007, long before P&W became involved with Cello and Boykin Trust. Mrs. Boykin's participation in Jack Boykin's scheme to defraud P&W is reprehensible. The Court does not seek to condone or overlook the

9

fact that Mrs. Boykin allowed Mr. Boykin to use her operating account to avoid P&W and other creditors. However, P&W has not provided sufficient legal precedent indicating that this Court can deny Mrs. Boykin's statutory exemption based on fraudulent acts that are not directly related to the exemption. Therefore, the Court finds that Mrs. Boykin's exemption under §27-14-29(b) should not be denied under the doctrine of unclean hands.

Based on the foregoing, the Court finds that the Debtor's motion to set apart as exempt life insurance proceeds should be granted, and Parsons & Whittemore Enterprises Corporation's ("P&W") objection to the motion should be overruled. It is hereby

**ORDERED** that the Debtor's motion to set apart as exempt life insurance proceeds is **GRANTED**, and the funds received from the Lincoln National life insurance policy are exempt under the Code of Alabama (1975) §27-14-29(b); and it further

**ORDERED** that Parsons & Whittemore Enterprises Corporation's objection to said motion is **OVERRULED**.

Dated:   January 6, 2012

WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE